**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| OWEN F. SILVIOUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:11-cv-00630-JDB |
| | ) | |
| SNAPPLE BEVERAGE CORPORATION, | ) | **ORAL HEARING REQUESTED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS

Defendant Snapple Beverage Corporation, through undersigned counsel, moves to dismiss this civil action pursuant to Fed. R. Civ. P. 12(b)(1), (5), and (6) for lack of subject-matter jurisdiction, insufficient service of process, and failure to state a claim upon which relief can be granted.   A Proposed Order consistent with this Motion is attached hereto.

Dated:  April 4, 2011                          Respectfully submitted,

                          _____/s/_____
                          William Thompson III (DC Bar: 974477)
                          Ben Fitzpatrick (DC Bar: 501806)
                          BAKER BOTTS L.L.P.
                          The Warner
                          1299 Pennsylvania Ave., NW
                          Washington, DC 20004-2400
                          Tel:     (202) 639-7700
                          Fax:     (202) 639-1191
                          William.Thompson@bakerbotts.com
                          Ben.Fitzpatrick@bakerbotts.com

                          Van Beckwith
                          BAKER BOTTS L.L.P.
                          2001 Ross Avenue
                          Dallas, TX 75201-2980

1

Tel:     (214) 953-6505
Fax:     (214) 661-4505
Van.Beckwith@bakerbotts.com

*Counsel for Snapple Beverage Corporation*

DC01:577734.4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| OWEN F. SILVIOUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:11-cv-00630-JDB |
| | ) | |
| SNAPPLE BEVERAGE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

The Complaint in this action is one of many filed by Owen F. Silvious, a repeat filer of frivolous lawsuits. He has filed at least a dozen actions and appeals in state and federal courts, many of which have been dismissed as frivolous, for lack of jurisdiction, for want of prosecution, or by Mr. Silvious himself after the defendants filed motions to dismiss.   Mr. Silvious' latest lawsuit must be dismissed pursuant to Fed. R. Civ. P. 12(b) because: (1) Plaintiff's sole claim is barred by the applicable statute of limitations, *see infra* at 4-9; (2) Plaintiff lacks standing to bring this action, *see infra* at 9-11; and (3) process of service in this action was improper, *see infra* at 11-13.  In addition, this Court possesses inherent power over its docket, plus authority pursuant to 28 U.S.C. § 1915, to prevent a frequent filer of vexatious lawsuits like Mr. Silvious from pursuing meritless litigation like this action.  *See infra* at 13-17.  Even if dismissal is not ordered, Mr. Silvious has blatantly and repeatedly abused the *in forma pauperis* process and

should be required to proceed as an average, non-indigent litigant and pay the costs of his litigation.

## BACKGROUND

Mr. Silvious is a resident of the Commonwealth of Virginia and has been serving a 105-month sentence in federal prison after pleading guilty in 2005 to five counts of mail fraud.[1] *See United States v. Silvious*, 512 F.3d 364, 367 (7th Cir. 2008).

Snapple Beverage Company ("Snapple") is a business that produces, *inter alia*, juice drinks and tea beverages ("beverages").

According to the Complaint, Mr. Silvious alleges he purchased a Snapple beverage on at least fifty trips to Washington, D.C., between August 31, 2003 and January 31, 2005. *See* Compl. at ¶¶ 3, 9. He alleges that Snapple advertised at the time that its beverages were "All Natural." *See id*. at ¶ 6. These Snapple beverages were sweetened with high fructose corn syrup, which Plaintiff contends is not a "natural ingredient."[2] *See* Compl. at ¶ 6. Plaintiff therefore claims he was injured "at the time he purchased [Snapple's] products" because "he thought he was consuming All Natural products when in fact the products were not all natural." *See id*. at ¶ 3.

In December 2010, while serving his current sentence, Plaintiff read about a class action lawsuit filed against Snapple claiming that high fructose corn syrup was not a natural ingredient. *See* Compl. at ¶ 9. After research identified other cases raising the same claim against Snapple, Plaintiff filed suit on March 1, 2011, in the Superior Court of the District of Columbia, and

---

[1] Mr. Silvious has a lengthy criminal record and has been convicted of crimes of dishonesty. *See, e.g., United States v. Silvious*, 91-7587, 1991 WL 209840, at *1 (4th Cir. 1991) (affirming conviction for fraud and bank fraud); Exhibit A at 7-17 (public record search listing Owen Franklin Silvious' criminal history).
[2] High fructose corn syrup "is made from corn and its primary constituents are glucose and fructose, the sugars that comprise table sugar and honey." *Weiner v. Snapple Beverage Corp.*, 07-cv-8742 (DLC), 2010 WL 3119452, at *1 (S.D.N.Y. 2010).

asserted the same claim that Snapple's beverages were not "All Natural."[3]  *See id*.  In the
Complaint, Plaintiff asserts that Snapple's advertising presenting its beverages as "All Natural"
violated the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §
28-3904(a), (d), and (e).  *See id*. at ¶ 1.  Specifically, he contends that the "All Natural" language
misrepresented the ingredients, qualities and health benefits of the beverages, as well as the
standard, quality and grade of the products, in violation of subsections (a) and (d).  *See id*. at ¶¶
7, 8.  He further contends these alleged misrepresentations had a tendency to mislead the
Plaintiff about what he was purchasing, in violation of subsection (e).  *See id*. at ¶ 8.  As relief,
Plaintiff seeks $225,000 in statutory damages.[4]  *See id*. at ¶ 11.  He also claims that at least 5,000
Snapple beverages were sold to other consumers in the District during an undefined period, and
asks for $22,500,000 in damages related to those purchases.[5]  *See id*. at ¶¶ 11, 15.  The Superior
Court granted Mr. Silvious' request to proceed *in forma pauperis* on March 1, 2011.

Upon information and belief, Mr. Silvious, an inmate at the Butner Federal Correctional
Complex, sent his Complaint to the Superior Court for the District of Columbia.  The Clerk's
office of that court apparently mailed the Complaint, Summons and Notice to the address Mr.
Silvious provided for Snapple.  The address, though, is out-of-date and is for an old office that
Snapple no longer uses.  The United States Postal Service evidently forwarded the Complaint
and attached documents to another Snapple office in New York.  The Complaint was delivered to
that office, which is not the headquarters of Snapple, on or around March 8, 2011.

---

[3]  Snapple removed this action to this Court on March 28, 2011.

[4]  Mr. Silvious reached this figure by claiming that each of the 50 bottles he purchased contained three
separate violations of the CPPA and that each of the resulting 150 violations "mandates a statutory penalty of
$1,500."  Compl. at ¶ 11.  Snapple does not concede that this represents a proper calculation of the potential
damages for CPPA violations.

[5]  As with his request for $225,000 in damages, Mr. Silvious alleges that each of the 5,000 bottles contained
three violations.  Applying the alleged mandatory statutory $1,500 penalty to the resulting 15,000 violations results
in a total of $22,500,000 in damages.  Snapple does not concede that this represents a proper calculation of the
potential damages for CPPA violations.

## **LEGAL STANDARD**

Dismissal is warranted where a complaint fails to "state a claim to relief that is plausible on its face." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1006 (D.C. Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)) (quotation marks omitted).   A court cannot "accept neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (internal quotation marks omitted).   Where it is apparent from the complaint that a plaintiff's claim is time-barred, it should be dismissed as a matter of law.   *See Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005).   "A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint." *Id.*

## **ARGUMENT**

I.    **Plaintiff's Sole Claim is Time-Barred as the Statute of Limitations Expired *At Least* Three Years Before He Filed this Action.**

This action must be dismissed for failure to state a claim because Mr. Silvious filed his Complaint years after the applicable statute of limitations had expired.   The statute of limitations for an alleged violation of CPPA is three years.   *See* D.C. Code § 12-301(8); *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 48 (D.D.C. 2006); *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 729 (D.C. 2003); *Smith v. Brown & Williamson Tobacco Corp.*, 108 F. Supp. 2d 12, 14 (D.D.C. 2000).

It is well established under D.C. law that "a claim accrues for purposes of the statute of limitations at the time the injury actually occurs*." Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001); *see also Johnson*, 451 F. Supp. 2d at 41.   Here, the Complaint plainly

states, "Plaintiff … purchased defendants [sic] products in the District of Columbia during the period August 31, 2003 through January 31, 2005."[6]  Compl. at ¶ 3.  Mr. Silvious claims that "he thought he was consuming All Natural products when in fact the products were not all natural" and that he therefore paid for qualities that were not present in the beverages he purchased.  *Id.*  The putative injury -- Mr. Silvious' misapprehension about whether he was purchasing an "All Natural" beverage -- occurred at the moment of sale when Mr. Silvious paid for and took possession of the beverages.  The statute of limitations clock therefore started when he *first* purchased a Snapple beverage on August 31, 2003, and expired three years later on August 31, 2006.[7]  This action was filed on March 1, 2011, over four years after the statute of limitations period had *expired*.  This action must therefore be dismissed as time-barred.

The Complaint summarily states that the statute of limitations has not expired without providing any basis for this assertion.  *See* Compl. at ¶ 13.  The Complaint does state that Mr. Silvious first "discovered" Snapple's alleged violation of CPPA in December 2010 when he read a court decision in another lawsuit against Snapple.  *See id.* at ¶ 9.  While D.C. courts do recognize a so-called "discovery rule" for calculating when a limitations period begins, this narrow exception to the general rule does not alter the fact that Mr. Silvious' claim is untimely.  Under this exception, "the statute of limitations will not run until plaintiffs knew or reasonably should have known that they suffered injury due to the defendants' wrongdoing."  *Johnson*, 451 F. Supp. 2d at 41.  This exception only applies to "a restricted class of cases" where "the

---

[6]       There is no allegation Mr. Silvious purchased a Snapple beverage after January 31, 2005.

[7]       Even if the injury occurred at the time of consumption, Mr. Silvious has been in custody since at least February 11, 2005.  *See United States v. Silvious*, No. 1:05-cr-00074-WCG, Warrant for Arrest [DE #7] (E.D. Wis.), attached as Exh. B; *id.*, Order of Detention Pending Trial [DE #13], attached as Exh. C; *id.*, 8/16/05 Court Minutes [DE #24], attached as Exh. D; *id.*, Judgment in a Criminal Case [DE #39], attached as Exh. E.  Mr. Silvious does not allege he consumed any beverage after that date, nor could he credibly do so since he was in custody.

relationship between the fact of injury and the alleged tortuous conduct is obscure." *Id.* (quoting *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472-73 (D.C. 1994)) (quotation marks omitted).

This exception does not apply here because there was nothing "obscure" about the relationship between Snapple's alleged tortuous conduct and Mr. Silvious' putative injury.  The relationship is actually simple and direct.   Mr. Silvious alleges that Snapple advertised its beverages as "All Natural," that he purchased Snapple beverages believing they were "All Natural," and that he was injured because the high fructose corn syrup they contained is not a natural ingredient.   *See* Compl. at ¶¶ 3, 6 (asserting that the beverages he purchased and consumed were not the "All Natural products" he believed they were "at the time he purchased" them).   There was no fraud or subterfuge here preventing Mr. Silvious from knowing *at the moment of sale* that he had a claim.   Moreover, this case does not fit within those categories of cases identified in *Johnson* where courts have held that the "discovery rule" might apply: medical malpractice, legal practice, defective house design and construction, repressed memories of sexual abuse, products liability where the injury is a latent disease, and fraud.   *See* 451 F. Supp. 2d at 41 (citing cases).

Even if the "discovery rule" were to apply, Mr. Silvious knew or should have known of his alleged injury more than three years prior to filing suit.   *See Johnson*, 451 F. Supp. 2d at 41; *Hendel v. World Plan Executive Council*, 705 A.2d 656, 661 n.5 (D.C. 1997) (holding that whether a person knew or should have known about a potential claim "must be assessed under an objective 'reasonable person' standard"); *see also Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 109 (D.D.C. 2002) ("a cause of action accrues when a plaintiff is on inquiry notice").   Mr. Silvious knew *or should have known* about his alleged injury from the moment he first purchased a Snapple beverage.   He was aware at the time of purchase that Snapple advertised the drink as

"All Natural," and the label on each bottle clearly stated that the beverage contained high fructose corn syrup.  *See* Compl. at ¶ 3; *Weiner*, 2010 WL 3119452, at *1.[8]  Accordingly, the bottle equipped Plaintiff with all of the relevant facts necessary to conclude *in August 2003* that the beverage he purchased was not, in his view, "All Natural."  And even if Mr. Silvious should not have known of his claim after a single purchase, the fact that he purchased dozens of bottles of Snapple -- each clearly labeled with its ingredients -- knowing that Snapple advertized its beverages as "All Natural" surely put him on notice of his claim, and started the statute of limitations clock, more than three years before this action was filed.  That Mr. Silvious only learned in December 2010 that Snapple's use of high fructose corn syrup had subjected it to litigation is of no consequence.   "Knowledge of facts, and not knowledge of the legal significance of those facts, controls the time of accrual."  *Johnson*, 451 F. Supp. 2d at 42; *see id.* ("a claim may accrue before the plaintiff knows all relevant facts").

This is borne out by the fact that other individuals filed suit against Snapple years ago claiming the same injury as Mr. Silvious does here.  On May 18, 2007, Stacy Holk filed a class action lawsuit in Monmouth County Superior Court (later removed to U.S. District Court) raising the same claim, *i.e.*, that high fracture corn syrup is not a natural ingredient.  *See Holk v. Cadbury Schweppes Americas Beverages*, 3:07-cv-3018, Compl. at ¶ 2(a) [DE #1] (D.N.J.), attached as Exh. F.[9]  Likewise, Evan Weiner asserted the same injury in a lawsuit he filed against

---

[8]       Publicly available documents may be considered in resolving a motion to dismiss.  *See Aquirre v. S.E.C.*, 671 F. Supp. 2d 113, 117 (D.D.C. 2009) (holding that courts hearing Rule 12(b)(6) motions are not limited to the facts alleged in the complaint, but may also consider "any documents either attached to or incorporated in the complaint [and] … matters of which [courts] may take judicial notice"); *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C.Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). See also Jackson v. ASA Holdings LLC, 2010 WL 4449367, at *2 (D.D.C. 2010). *See also Jackson v. ASA Holdings LLC*, 2010 WL 4449367, at *2 (D.D.C. 2010).

[9]       The court in *Holk* granted the parties' request for voluntary dismissal with prejudice after Ms. Holk elected not to proceed with litigation following the class certification denial in *Weiner*.  *See Holk,* 3:07-cv-3018-MLC, Order of Dismissal with Prejudice [DE #145] (D.N.J. Nov. 22, 2010).

Snapple on October 10, 2007, in the Southern District of New York.  *See Weiner v. Snapple Beverage Corp.*, 1:07-cv-8742, First Am. Compl. at ¶ 2(a) [DE #1] (S.D.N.Y.), attached as Exh. G.[10]   Mr. Silvious' own Complaint cites and acknowledges these cases.   That these other individuals claimed that high fructose corn syrup was not natural as far back as 2007 proves that Plaintiff knew *or should have known* of his alleged injury more than three years before he filed this action.   If nothing else, these cases, as well as the labels clearly stating the beverages contained high fructose corn syrup on the 50 bottles Mr. Silvious purchased, placed Mr. Silvious on inquiry or constructive notice of his potential claims, requiring that he investigate Snapple's "All Natural" advertising and starting the clock more than three years before the Complaint was filed here.  *See Jacobson*, 201 F. Supp. 2d at 109-12; *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996).

"The discovery rule does not … give the plaintiff *carte blanche* to defer legal action indefinitely if she knows or should know that she may have suffered injury and that the defendant may have caused her harm."  *Hendel*, 705 A.2d at 661 (internal quotation marks and citation omitted).  Yet, that is essentially what Mr. Silvious seeks here; *carte blanche* to revive a stale claim.  This Court cannot permit this to happen.  Regardless of whether the Court applies the general rule or the "discovery rule" exception, the statute of limitations clock started when Mr. Silvious first purchased a Snapple beverage in the District on August 31, 2003.  Even if the Court were to start the clock at the time Mr. Silvious consumed the last Snapple beverage he purchased before he was detained in February 2005, the statute of limitations expired in February 2008, three years before he filed this suit.  No matter how the evidence is viewed, Mr. Silvious

---

[10]       The court in *Weiner* denied Plaintiffs' Motion for Class Certification, *see* 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010), and granted summary judgment for Snapple on January 21, 2011, finding, among other things, that neither of the two remaining plaintiffs could establish injury or damages, *see* 2011 WL 196930, at *5 (S.D.N.Y. Jan. 21, 2011).

indisputably sat on his hands for years before filing this Complaint, and, as a result of *his* delay, the sole cause of action presented in the Complaint is time-barred and this action must be dismissed with prejudice.

## II.     Plaintiff Lacks Standing to Bring this Action

The Complaint must be dismissed pursuant to Rule 12(b)(1) because the Plaintiff lacks standing to bring this action.  Before relief can be granted under D.C. law, a plaintiff must show in "every case" an "injury that is attributable to the defendant."  *Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1206-07 (D.C.  2002); *see also York Apartments Tenants Ass'n v. District of Columbia Zoning Comm'n*, 856 A.2d 1079, 1085 (D.C. 2004); *Fisher v. Gov't Employees Ins. Co.*, 762 A.2d 35, 38 (D.C. 2000) (courts can only "decid[e] 'cases and controversies'"); *Lee v. District of Columbia Bd. of Appeals & Review*, 423 A.2d 210, 216 n.13 (D.C. 1980).  The Complaint, however, failed to allege any injury that Mr. Silvious suffered within the three-year limitations period prior to filing the Complaint.

Even if this were not so, Plaintiff's summary allegation that he received "something less than what he actually paid for at the time he purchased" the Snapple beverages fails to state a "concrete and particularized" injury, as the law requires.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992); *see Jackson v. ASA Holdings, LLC*, 2010 WL 4449367, at *5-6 (D.D.C. 2010) (dismissing CPPA claim where plaintiff failed to state how she was "actually harmed by the alleged misrepresentations").  Such vague language -- "something less" -- is neither concrete nor particularized.  Likewise, Plaintiff failed to allege that he purchased the Snapple beverages *because* he believed they were "All Natural."   In the absence of this allegation, there is no causal connection between the use of that language and Plaintiff's putative

injury, as is necessary to establish standing.  *See Lujan*, 504 U.S. at 560-61; *Osborne v. Capital City Mortgage Corp.*, 667 A.2d 1321, 1330 (D.C. 1995).

As no actionable injury exists to provide Plaintiff with standing to proceed, this action must be dismissed with prejudice.  *See Long Term Care Pharmacy Alliance v. United Health Group, Inc.*, 498 F. Supp. 2d 187, 196 (D.D.C. 2007) (dismissing complaint with prejudice where plaintiff could not establish standing); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177-78 (D.D.C. 2003) (dismissing complaint where plaintiff could not demonstrate a "particularized injury" and therefore lacked standing to sue).

Plaintiff asserts that a 2000 amendment to the CPPA removed any requirement that he demonstrate "he was mislead, deceived, or damaged."  Compl. at ¶ 12.  This is not true.  Courts in this jurisdiction have held that a plaintiff must prove that he or she was injured before relief can be granted under the CPPA, the language of the 2000 amendment notwithstanding.  *See Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 28-29 (D.D.C. 2007) ("plaintiff must present an actual or threatened injury-in-fact to have standing to raise his [CPPA] claims"); *Hakki v. Zima Co.*, No. 03-9183, 2006 WL 852126, at *2, n.1 (D.C. Super. Ct. Mar. 28, 2006); *Williams*, 297 F. Supp. 2d at 177 ("Standing requires individualized proof of both the fact and the extent of the injury.  The amendment to the CPPA in 2000 did not change the requirements for standing under D.C. law, despite its broad language.").

The Complaint includes a request for $22,500,000 in damages for alleged violations of CPPA triggered by sales of Snapple beverages to customers other than Mr. Silvious.  *See* Compl. at ¶¶ 11, 15.  This is essentially an attempt to file a class action lawsuit.  The Complaint, however, fails to assert that it is a class action, make any attempt to certify this action as a class action, or allege that the CPPA allows Mr. Silvious to collect damages suffered by others.  More

importantly, the fact that he lacks standing to bring this action on his own behalf precludes him from bringing it on behalf of others.  *See Franze v. Equitable Assurance*, 296 F.3d 1250, 1255 (11th Cir. 2002) ("Since Franze and Busher filed suit after the statute of limitations had run, they lacked standing to assert a claim on behalf of a class."); *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 463 (S.D. Cal. 2007) ("Plaintiff experienced no harm within the one year statute of limitations .… Plaintiff therefore lacks standing" to bring a claim on behalf of others); *AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676, 680 (N.D. Ala. 2005) ("If a claim of the named plaintiff is barred by the applicable statute of limitations, there is no personal stake and therefore the named plaintiff lacks standing to represent either herself or the putative class.").  Also, this Court previously denied Mr. Silvious the ability to proceed on behalf of others, concluding that he "cannot press claims … on behalf of anyone else." *Silvious v. Ungar's Food Products, Inc.*, 1:10-cv-00639-JDB, 2010 Wl 3324747, at *1 (D.D.C. Aug. 24, 2010) (citing 28 U.S.C. §1654; *Georgiades v. Martin-Trigona*, 729 F.2d 831, 834 (D.C. Cir. 1984); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (*per curiam*)).

## III.    This Action Must Be Dismissed For Lack of Proper Service of Process

Rule 4(h) of the District of Columbia Superior Court Rules of Civil Procedure states that service on a foreign corporation shall be effected:

> in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons, complaint and initial order to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]

Rule 4(e)(1) states that service may be effectuated upon an individual "pursuant to District of Columbia law."  "[T]he burden of proof in establishing proper service of process rests with the plaintiff." *James v. Booz-Allen & Hamilton, Inc.*, 206 F.R.D. 15, 18 (D.D.C. 2002) (citing *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987)).  "[A]ctual notice of an action cannot cure

ineffective service of process." *Johnson v. Payless Shoe Source, Inc.*, 841 A.2d 1249, 1254 (D.C. 2004).

The service of process in this action has not been proper under any of the grounds identified in Rule 4(h).  A copy of the summons, complaint and initial order was not delivered to an officer or agent of Snapple or any individual authorized by appointment or law to receive service of process.  *See generally Rosen & Associates, Inc. v. Hurwitz*, 465 A.2d 1114, 1117 (D.C. 1983) (service upon person authorized to open mail not sufficient to effect proper service absent proof that person was authorized to accept service).

Furthermore, District law requires that a foreign corporation be served "in the District." D.C. Code § 13-334; *see Gowens v. DynCorp*, 132 F. Supp. 2d 38, 42 (D.D.C. 2001) ("service has not been properly accomplished in this case.  Plaintiff served DynCorp at its headquarters in Virginia, not the District of Columbia.").  "Rule 4's general prescription for service of process cannot replace the specific jurisdictional requirement of D.C. Code § 13-334(a) that service be made *in the District of Columbia*." *Everett v. Nissan Motor Corp. in U.S.A.*, 628 A.2d 106, 108 (D.C. 1993) (emphasis added); *see Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. 2002) (citing *Everett* to conclude that District law requires that "service be made in the District of Columbia," notwithstanding the fact that Superior Court Rule 4 "appear[s] to permit service upon corporations by mail").  The mailing of service documents to a prior address in New York does not satisfy this means of effectuating service of process.

Snapple does not possess a registered agent in the District.  This, however, does not cure the defective service of process.  A foreign corporation which does not possess an agent or certificate of authority to conduct business in the District "shall … be deemed to have thereby appointed the Mayor its agent and representatives upon whom any process, notice or demand

may be served." D.C. Code § 29-101.108(c).  This statute requires that the Mayor then forward the documents "by registered mail or certified mail" to the corporation.  There is no evidence this happened here -- the package Snapple's New York office received containing the Complaint was not from the Mayor's office and did not bear markings suggesting it was sent via registered or certified mail.  *See* Exh. H (copy of envelope Snapple received containing Mr. Silvious' Complaint).

Where service of process is improper, dismissal of the action is warranted under Fed. R. Civ. P. 12(b)(5).  *See Gorman*, 293 F.3d at 516 (affirming dismissal of action for want of proper service).  While courts traditionally afford *pro se* litigants latitude where service has been improperly executed, Mr. Silvious' lengthy record of filing civil lawsuits, including at least three last year against corporations in Superior Court, disqualifies him from any such benefit.  *See infra* at § IV.

## IV.   This Action Should Be Dismissed In Light of Mr. Silvious' Repeated Abuse of the Litigation System

This much is evident from the record -- Mr. Silvious is a frequent filer of frivolous and vexatious lawsuits.  He has filed numerous civil actions and appeals in state and federal courts against a broad array of opponents alleging all forms for injury.[11]  Most of these lawsuits apparently have been dismissed as frivolous, for lack of jurisdiction, for want of prosecution, or by Mr. Silvious himself after the defendants filed motions to dismiss.  In some instances, the corporate defendants evidently settled with Mr. Silvious rather than pay the costs of fighting his meritless claims.  *See Silvious v. Chiquita Brands Int'l Inc.*, 1:10-cv-1421-JDB, Defs.' Joint Mot. for Sanctions at 2 [DE #9] (D.D.C.), attached as Exh. I.

---

[11]      A search for the last name "Silvious" in the PACER system of this Court turns up 20 cases.

Mr. Silvious' current *modus operandi* evidently is to file copy-cat lawsuits that mirror class action lawsuits filed by other litigants. *See* Compl. at ¶ 9. On March 16, 2010, he sued Ungar's Food Products under the CPPA claiming that it misrepresented the fat and calorie content of certain of its products. *See Silvious v. Ungar's Food Products Inc.*, 1:10-cv-00639-JDB, 2010 WL 3324747, at *1 (D.D.C. Aug. 24, 2010); *id.*, Defs.' Cross-Mot. to Dismiss at 4-5 [DE #9] (describing how Mr. Silvious' action recycles "word for word" claims from a pending class action), attached as Exh. J.[12] On May 3, 2010, he sued several corporations, claiming they violated the CPPA by conspiring to violate the District of Columbia Antitrust Act ("Antitrust Act"), D.C. Code §§ 28-4502 and 4503, with respect to the sale of hydrogen peroxide. *See Silvious v. Akzo Noble, Inc.*, 1:10-cv-00969-JDB, Compl. at ¶¶ 18, 19, 23 [DE #1] (D.D.C.), attached a Exh. K; *id.*, Domestic Defs.' Mot. to Dismiss at 12-16 [DE #11] (listing other hydrogen peroxide actions), attached as Exh. L. A month later on June 3, Mr. Silvious sued Chiquita Brands International, Dole Foods, and Del Monte, again claiming they violated the CPPA by violating the Antitrust Act by fixing the price of bananas sold in the United States.[13] *See Silvious v. Chiquita Brands Int'l Inc.*, 1:10-cv-01139-JDB, Comp. at ¶ 34 [DE #1-1] (D.D.C.), attached as Exh. M; *id.*, Defs.' Mot. to Dismiss at 15-16 [DE #7] (listing eight suits filed against defendants "for the exact same acts of price fixing as alleged here"), attached as Exh. N. This Court dismissed the first action, and Mr. Silvious voluntarily dismissed the other two after the defendants filed motions to dismiss on standing, statute of limitation, and jurisdictional grounds.

---

[12]     Mr. Silvious recently refiled his action against Ungar Food Products. *See Silvious v. Ungar's Food Products, Inc.*, 1:11-cv-00539-JDB (D.D.C.).

[13]     The complaints contain remarkable similarities. For example, Mr. Silvious here claims that he purchased a Snapple beverage during each of the 50 trips he made to the District. *See* Compl. at ¶ 9. In the *Akzo Noble* matter, he claimed that he purchased hydrogen peroxide during each of those 50 visits, while in the lawsuit he filed against Chiquita Brands, he claimed he purchased bananas during each visit. *See Akzo Noble* Compl. at ¶ 5; *Chiquita* Compl. at ¶ 5.

Other civil actions that Mr. Silvious has filed include:

- *Silvious v. Pharaon*, No. 4:92-cv-00126 [DE #79, 84] (S.D. Ga.) (Plaintiff's action was dismissed by defendant's motion and appeal dismissed for failure to prosecute)

- *Silvious v. United States*, No. 7:94-cv-00214 [DE #40] (W.D. Va.) (Plaintiff's action dismissed on defendant's motion)

- *Silvious v. Bank of Credti & Commerce Int'l*, No. 2:95-cv-00830  [DE #4] (C.D. Cal.) (Plaintiff's action dismissed for lack of prosecution)

- *Silvious v. Archer-Daniels, et al.*, No. 5:96-cv-00128 [DE #2-4, 7] (W.D. Va.) (Plaintiff's action dismissed by Plaintiff's motion, in the face of a motion to dismiss for failure to state a claim upon which relief can be granted)

- *Silvious v. Warden*, No. 4:99-cv-02218 [DE #5] (M.D. Pa.) (Plaintiff's action dismissed for failure to file complaint or other pleading necessary to invoke the continuing jurisdiction of the court)

- *Silvious v. Shah*, No. 4:00-cv-00820 [DE #33] (E.D. Ark.) (Plaintiff's action dismissed after he failed to demonstrate service upon the defendants)

- *Silvious v. United States Parole Comm'n*, No. 7:02-cv-1080 [DE #14] (W.D. Va.) (Plaintiff's action dismissed for lack of jurisdiction)

- *Silvious v. Brooks, et al.*, No. 1:03-cv-00555 [DE #3, 11] (E.D. Va.) (Plaintiff's action dismissed for failure to exhaust administrative remedies; appeal dismissed for failure to prosecute)

And this is simply a *partial* list based on Snapple's limited research.

Congress has made clear that federal courts should not grant prisoners like Plaintiff who file vexatious *pro se* lawsuits limitless access and unfettered latitude to burden the judicial system with meritless claims.  Section 1915(g) of Title 28 of the United States Code states:

In no event shall a prisoner bring a civil action … if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

Mr. Silvious has already accrued his three strikes.  *First*, on February 23, 1998, Judge Aubrey E. Robinson of this Court dismissed Mr. Silvious' petition for writ of mandamus for

failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  *See Silvious v. United States Parole Comm'n*, 1:97-cv-02224, [DE #3, 8] (D.D.C.) (identifying Mr. Silvious as "prisoner plaintiff" and listing his address at Butner), attached as Exh. O.   *Second*, on March 24, 2008, while Mr. Silvious was incarcerated, Judge Adalberto Jordan of the United States District Court for the Southern District of Florida held that Mr. Silvious' appeal challenging a class action settlement was "frivolous."  *See Solo v. Chiquita Int'l Brands Inc.*, 05-61335-CIV-JORDAN, Order Denying Owen Silvious' Motion to Proceed IFP on Appeal and Requiring Mr. Silvious to Post Rule 7 Appellate Bond for Costs [DE # 135] (S.D. Fl.), attached as Exh. P; *see id*. at n.2 (stating that Mr. Silvious "is currently serving a 105-month federal sentence").  *Third*, on February 19, 2009, the Third Circuit dismissed as "legally frivolous" Mr. Silvious' appeal of a series of district court decisions.  *See In re Plastics Additives Antitrust Litigation*, No. 08-3358, 2009 WL 405522, at *1 (3d Cir. 2009) (dismissing action pursuant to 28 U.S.C. § 1915(e)(2)(B)).   At that time, Mr. Silvious was serving his current sentence.  In addition, the Seventh Circuit rejected as "frivolous" at least two claims Mr. Silvious made on appeal of his current criminal conviction.  *United States v. Silvious*, 512 F.3d 364, 372 (7th Cir. 2008).  This lawsuit should therefore be dismissed pursuant to Section 1915(g).

To be sure, Plaintiff originally filed this action, as well as the four other actions heard by this Court over the past year, in D.C. Superior Court.  While this arguably may be a clever means for Mr. Silvious to escape the letter of Section 1915, it should not protect him from its spirit.  If this Court does not dismiss this action pursuant to Section 1915(g), or any other ground presented herein, this Court should exercise its inherent power to control its docket and revoke Mr. Silvious' ability to proceed *in forma pauperis*.  *See Link v. Wabash*, 370 U.S. 626, 630-31 (1962) (affirming trial court's inherent authority over its docket); *see also Bristol Petroleum*

*Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990) (noting authority of district judges to dismiss actions and impose other sanctions "to enable [them] to discharge efficiently their front-line responsibility for operating the judicial system"). The Plaintiff's decades-long pattern of exploiting the civil litigation system to bring meritless actions rests upon his ability to proceed *in forma pauperis*.[14] Without having to pay for his litigation, Mr. Silvious is free to bring whatever suit he wants, wherever he wants, and regardless of the cost to the target defendant, all apparently in the hopes the defendant will settle rather than absorb the greater cost of litigation. He has abused this vital means to provide the indigent access to our nation's courts for too long, and he should now bear the costs of his litigation as any ordinary, non-indigent litigant would.[15]

## CONCLUSION

For the aforementioned reasons, Defendant Snapple Beverage Company respectfully requests that this Court dismiss this action with prejudice.

Dated: April 4, 2011                     Respectfully submitted,

                                         _____/s/_____
                                         William Thompson III (DC Bar: 974477)
                                         Ben Fitzpatrick (DC Bar: 501806)
                                         BAKER BOTTS L.L.P.
                                         The Warner
                                         1299 Pennsylvania Ave., NW
                                         Washington, DC 20004-2400

---

[14]     Mr. Silvious has previously been denied the ability to proceed *in forma pauperis*. Judge Jordan denied Plaintiff's request because Plaintiff's appeal was "frivolous and not taken in good faith." Exh. P at 3; *see Silvious v. Brooks, et al.*, No. 1:03-cv-00555 [DE #10] (E.D. Va.) (dismissing application to proceed *in forma pauperis*), attached as Exh. Q.

[15]     Plaintiff has even been accused of extorting money from defendants by filing suit seeking millions of dollars in damages, then offering to settle for a fraction of that. *See* Exh. I at 1. Before filing the instant action, Plaintiff mailed a letter to Snapple announcing his intention to sue Snapple for violating the CPPA unless Snapple agreed to "settle my claim." *See* Letter from Owen J. Silvious to Snapple, dated Jan. 6, 2011, attached as Exh. R. Mr. Silvious stated that he purchased 50 Snapple beverages during his visits to the District between January 1, 2001, *and December 31, 2008*, despite the fact that he now alleges that he purchased these drinks during a different, shorter time period. *See id.*; Compl. at ¶ 9.

Tel:     (202) 639-7700
Fax:     (202) 639-1191
William.Thompson@bakerbotts.com
Ben.Fitzpatrick@bakerbotts.com

Van Beckwith
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, TX 75201-2980
Tel:     (214) 953-6505
Fax:     (214) 661-4505
Van.Beckwith@bakerbotts.com

*Counsel for Snapple Beverage Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing and associated attachments

were served by certified U.S. mail on this 4th day of April, 2011, on:

> Owen F. Silvious
> 16497077 FCI-2 Butner
> PO Box 1500
> Butner, NC 27509

> _____/s/_____
> William Thompson III