UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Owen F. Silvious,

    Plaintiff,

        v.

Snapple Beverage Corporation,

    Defendant.

Civil Action No. 11-0630 (JDB)

## MEMORANDUM OPINION

This action, removed from the Superior Court of the District of Columbia, is before the Court on defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(5) for insufficient service of process, and 12(b)(6) for failure to state a claim upon which relief can be granted. Defendant correctly argues that the complaint is barred by the District of Columbia's three-year statute of limitations. Hence, the Court, finding that it has jurisdiction over the case, will grant defendant's motion to dismiss under Rule 12(b)(6).[1]

### I. BACKGROUND

The relevant facts are as follows. On March 1, 2011, plaintiff, proceeding *pro se*, filed his complaint in the Superior Court of the District of Columbia from the Federal Correctional Institution in Butner, North Carolina. He alleges that defendant, Snapple Beverage Corporation, "violated a 'trade practice law' of the District of Columbia . . . ," Compl. ¶ 1, namely, the

---

[1] The Court would not dismiss the case under Rule 12(b)(5) for insufficient service of process without first providing plaintiff the opportunity to cure any service deficiencies. Because the case will be dismissed as time-barred, the Court will not address the contested service issue.

District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901 *et seq.*. Specifically, plaintiff alleges that between August 31, 2003 and January 31, 2005, he purchased defendant's products on at least 50 separate occasions in the District of Columbia that "he thought" were "All Natural products when in fact [they] were not all natural." *Id*. ¶¶ 3, 9. Although plaintiff does not identify the specific products he purchased, he alleges generally that defendant advertised its fruit drinks and ice tea drinks as all natural "when in fact they . . . contained High Fructose Corn Syrup (HFCS), a highly processed sugar substitute." *Id*. ¶ 6. Plaintiff alleges that, at the time of his purchases, "he did not know that HFCS was not an all natural ingredient" and that he "only discovered the [statutory] violations . . . in December 2010 when he read" a decision issued by the Eastern District of California. *Id*. ¶ 9 (citing *Von Koenig v. Snapple*, 713 F. Supp. 2d 1066 (E.D. Cal. 2010)). He alleges that "he received something less than what he actually paid for at the time he purchased defendants' products in the District of Columbia." *Id*. ¶ 3.

Defendant removed the case to this Court on March 28, 2011, and filed the instant motion to dismiss on April 4, 2011. On April 14, 2011, plaintiff filed an amended pleading to "[a]mend[] certain portions of the Original Complaint . . . ." Amended Pleading (Complaint) [Dkt. # 8] at 1. He substituted, *inter alia*, paragraph 17 of the original complaint as follows:

> Plaintiff ask [sic] this court to enter judgment against [Snapple] for statutory civil penalties for violation of the [CPPA] in the amount of $225,000.00 in favor of plaintiff . . . . The statutory civil penalties are payable because defendant violated the Act, not because plaintiff might have been injured or suffered any actual damages. In fact plaintiff does not have to be injured or suffer any actual damages for an award of damages.

Am. Compl. ¶ 6. Plaintiff seeks to have any award of damages distributed as follows: 20 percent each to the District of Columbia branches of the Salvation Army, United Way, and the American

2

Red Cross, 20 percent to the Mayor's Office for distribution to homeless shelters in the District, 10 percent to the District of Columbia Consumer Protection Fund, and 10 percent to himself "after payment of all fees, costs and expenses of this action. *Id*. ¶ 5.

## II. DISCUSSION

As an initial matter, plaintiff asserts that defendant's motion to dismiss should be denied as moot in light of his filing of the amended complaint. *See generally* Pl.'s Reply to Def.'s Mot. to Dismiss Pl.'s Original Compl. [Dkt. # 9]. Given that plaintiff made it clear that he was amending "certain portions" of the original complaint and proffered no superseding amended complaint, his assertion is baseless. The Court considers the original complaint and the amended pleading together as the operative complaint. *See Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (in construing *pro se* filings liberally, courts should read all of the *pro se* party's filings together).

1. <u>Subject Matter Jurisdiction</u>

Defendant argues that dismissal is warranted under Rule 12(b)(1) because plaintiff lacks standing to sue. Because "[t]he defect of standing is a defect in subject matter jurisdiction," *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987), the Court must resolve this issue first. *AT&T Corp. v. FCC*, 317 F.3d 227, 237 (D.C. Cir. 2003).

Article III of the U.S. Constitution "limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies,' " *Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982), and the doctrine of standing serves to identify those " 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish the

"irreducible constitutional minimum of standing," a plaintiff must allege (1) an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized," and (b) "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal quotation marks and citations omitted). In order for an injury to be "concrete and particularized," it must "affect the plaintiff in a personal and individual way." *Id*. at 560 n.1.

In his amended complaint, plaintiff suggests that he has suffered no actual injury, *see* Am. Compl. ¶ 6, but, contrary to his apparent belief, "a lawsuit under the CPPA does not relieve a plaintiff of the requirement to show a concrete injury-in-fact to himself." *Grayson v. AT&T Corp*., 15 A.3d 219, 244 (D.C. 2011); *see Muldrow v. EMC Mortgage Corp.* --- F. Supp. 2d ---, ---, 2011 WL 713681, at *3 (D.D.C., Mar. 2, 2011) (quoting *Osbourne v. Capital City Mortgage Corp.*, 667 A.2d 1321, 1330 (D.C. 1995)) ("To obtain standing to sue for a violation of the DCCPPA, a plaintiff 'must have suffered damage as a result of the use or employment of an unlawful trade practice.' ") (quoting D.C. Code § 28-3905(k)(1)) (citing cases); *Grayson*, 15 A.3d at 238 (confirming "that the 2000 amendments [to the CPPA], viewed in the context of the legislative and drafting history of those amendments, do not reveal an explicit intent of the Council to erase the constitutional standing requirement to which [the D.C. Court of Appeals] has adhered during the past several decades").

Accepting, as it must on a motion to dismiss, that plaintiff made the alleged purchases of Snapple products at issue, the Court finds that plaintiff, as a consumer of products in the District of Columbia alleging an unlawful trade practice, has Article III standing. *See Shaw v. Marriott*

*Intern., Inc.*, 605 F.3d 1039, 1042-43 (D.C. Cir. 2010) (concluding that "Article III requires no more" than payment for services and pecuniary harm as a result of pricing practices). Hence, defendant's motion to dismiss under Rule 12(b)(1) will be denied.

2. Statute of Limitations

Claims under the CPPA must be brought within three years of accrual. *See Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 48 (D.D.C. 2006) (quoting D.C. Code § 12-301(8)) (citing cases). As a general rule, an action accrues upon injury or when a reasonable person knew or should have known about the injury. *See Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996). Specifically,

> a cause of action accrues for purposes of the statute of limitations when the plaintiff has either actual notice of [his] cause of action or is deemed to be on inquiry notice because if [he] had met [his] duty to act reasonably under the circumstances in investigating matters affecting [his] affairs, such an investigation, if conducted, would have led to actual notice. What is "reasonable under the circumstances" is a highly factual analysis. The relevant circumstances include, but are not limited to, the conduct and misrepresentations of the defendant, and the reasonableness of the plaintiff's reliance on the defendant's conduct and misrepresentations . . . .

*Id.; see, e.g., Clay Properties, Inc. v. Wash. Post Co.,* 604 A.2d 890, 895 (D.C. 1992) ("A purchaser [of real property] is held to be on inquiry notice where he or she is aware of circumstances which generate enough uncertainty about the state of title that a person of ordinary prudence would inquire further about those circumstances."). "What constitutes the accrual of a cause of action is a question of law . . . . When accrual actually occurred in a particular case is a question of fact." *Diamond*, 680 A.2d at 370.

Defendant argues that this action is time-barred because plaintiff filed it on March 1, 2011, more than six years after his last alleged purchase on January 31, 2005. Plaintiff refutes this argument with two principles. First, he asserts that he "discovered the violations of the DC

5

trade practices in December 2010, when he read [the] decision" issued by the Eastern District of California in *Koenig v. Snapple*. Compl. ¶ 9. Second, he asserts that his incarceration at the time of discovery tolls the running of the statute of limitations. Am. Compl. ¶ 3 (citing D.C. Code § 12-302(a)(3) ("Disability of plaintiff").

*A. The Discovery Rule*

The "so-called 'discovery rule' applies in cases in which the injury is not of the sort that can readily be discovered when it occurs; in such cases, a cause of action accrues and the limitations period begins to run only when the plaintiff discovers, or with due diligence should have discovered the injury that is the basis of the action." *Williams v. Conner*, 522 F. Supp. 2d 92, 100 (D.D.C. 2007) (quoting *Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221, 1226 (D.C. Cir. 1996)) (internal quotation marks and other citation omitted); *see Nader v. Democratic Nat. Comm.*, 567 F.3d 692, 700 (D.C. Cir. 2009) ("standard is knowledge of '(1) an injury; (2) its cause in fact; and (3) some evidence of wrongdoing,' . . . and it includes not only what Nader knew, but what he could by reasonable diligence have known . . .") (quoting *Diamond*, 680 A.2d at 379, 381). At the very least, the discovery rule necessarily implies the concealment of material facts or a "latent" injury that "is not manifested until long after the unlawful act." *Kuwait Airways Corp. v. American Sec. Bank, N.A.*, 890 F.2d 456, 461 (D.C. Cir. 1989); *see id.* (listing cases applying discovery rule as those involving medical malpractice, latent disease, legal malpractice, breach of contract and warranty for deficient design and construction, and fraudulent concealment or misrepresentation) (citations omitted); *Johnson*, 451 F. Supp. 2d at 41 (discovery rule applies "[i]n a restricted class of cases . . . where the relationship between the fact of injury and the alleged tortuous conduct [is] obscure . . .") (citation and internal quotation marks

6

omitted); *The Plan Comm. v. Pricewaterhouse Coopers, LLP*, 335 B.R. 234, 252 (D.D.C. 2005) (same).

In his amended complaint, plaintiff maintains that he "actually discovered that defendant violated the statutes" during his incarceration, Am. Compl. ¶ 3, but he acknowledges that he "could [] have discovered a violation of the statute [] at least [by] May 18, 2007, [when] the state action was commended [sic] in the Superior Court of New Jersey by Stacy Holk . . . ." *Id*. Plaintiff's knowledge allegedly obtained from existing lawsuits is of no moment, insofar as a claim accrues from the point that "a plaintiff has knowledge of the facts that constitute the cause of action, not when he attains knowledge of the legal significance of those facts." *Fleck v. Cablevision VII, Inc.*, 799 F. Supp. 187, 190 (D.D.C. 1992) (citations omitted). The ingredient label on the purchased drinks provided plaintiff with all of the information he needed to reasonably question the veracity of defendant's "all natural" claim and its significance under the applicable D.C. law. *See Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *1 (S.D.N.Y., Aug. 5, 2010) ("It is undisputed that Snapple disclosed the inclusion of HFCS in the ingredient list that appears on the label of every bottle of Snapple that was labeled 'All Natural.' "); *see generally Grayson*, 15 A.3d 219 (discussing 2000 amendments to the CPPA). Because plaintiff had inquiry, even if not actual, notice of a claim at the time that he purchased each beverage, he cannot rely on the discovery rule to save those long-expired claims. *See Diamond*, 680 A.2d at 372 ("Once either actual or inquiry notice is present . . . the statute of limitations begins to run as a matter of law.").

*B. Statutory Tolling*

Plaintiff's tolling claim applies only if he were imprisoned "at the time the right of action accrue[d]." D.C. Code § 12-302(a)(3). Based on the foregoing discussion, the Court finds that plaintiff's action accrued upon his purchase of each drink. Plaintiff has supplied only two dates of purchase: August 31, 2003, and January 31, 2005, Compl. ¶ 9, and he does not dispute defendant's supposition that he has been incarcerated "since at least February 11, 2005." Statement of P. & A. in Supp. of Def.'s Mot. to Dismiss [Dkt. # 5] at 5 n.7. Hence, the statutory tolling provision does not apply because plaintiff was not incarcerated at the time his cause of action accrued.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that this action is barred by the District of Columbia's three-year statute of limitations. Hence, defendant's motion to dismiss under Rule 12(b)(6) is granted. A separate Order accompanies this Memorandum Opinion.

s/
JOHN D. BATES
United States District Judge

DATE: June 27, 2011